[No. 11355. Department Two. February 16, 1914.]

J. D. Reard *et al.*, *Respondents*, v. Ephrata Orchard Homes Company, *Appellant*.[1]

Vendor and Purchaser—Rescission by Vendor—Forfeiture—Tendered Deed. Where payments prior to the last one due upon an executory contract for the sale of land had not been paid and were in default, the contract may be forfeited on notice, as provided therein, without any tender of the deed, since such payments were independent of the covenant to convey.

Frauds, Statute of—Conveyance of Land—Oral Contracts. An oral contract changing the terms of a written contract for the sale of land is void, within the statute of frauds, unless partly performed; hence where an option was orally given to the purchaser to

[1]Reported in 138 Pac. 678.

take up certain papers placed in escrow, for two months, and nothing was done to exercise the option, the vendor had the right to withdraw the escrow.

Vendor and Purchaser—Contracts—Defaults—Defects in Title. A defect in title is no excuse for failure to make all payments except the last one on an executory contract for the sale of land; as it is enough if the title be good at the time of making the final payment.

Appeal from a judgment of the superior court for Grant county, Steiner, J., entered January 2, 1913, upon findings in favor of the plaintiffs, in an action for equitable relief, tried to the court. Affirmed.

*Sam R. Summer* and *Reeves, Crollard & Reeves*, for appellant.

*Boyd P. Doty (E. L. Skeel*, of counsel), for respondents.

Mount, J.—The plaintiffs brought this action to annul an executory contract and for the possession of lands described in the contract. The cause was tried to the court without a jury, and resulted in a judgment substantially as prayed for in the complaint. The defendant has appealed.

The facts are, in substance, as follows: On the 16th day of August, 1909, the respondents, J. D. Reard and wife, entered into a written contract with one L. V. Wells. This contract, by mesne conveyances, was assigned to the appellant. This contract provided for the sale by the respondents to the appellant of 380 acres, more or less, of unimproved land, located near the town of Ephrata, in Grant county. The purchase price was $30,000, payable in installments as follows: $4,000 on or before March 1, 1910; $2,000 on or before July 1, 1910; $10,000 on or before March 1, 1911; $10,000 on or before March 1, 1912; and $4,000 on or before March 1, 1913; all deferred payments to draw interest from the 16th day of August, 1909, at the rate of six per cent per annum, payable annually on the 16th day of August of each year until the whole sum was fully paid.

The contract also provided, as a consideration therefor, that certain acts were to be performed by the vendee, among which were the payment of all taxes, assessments, etc., which might accrue against the property after the date of the contract; the digging of a well of a certain capacity and the installation of an irrigation system in connection therewith; and the platting of the land into tracts. Time was declared to be the essence of the contract; and it was provided therein that, in case of default on the part of the vendee in the performance of any of the obligations, the vendors were released from all obligations in law or equity imposed by the contract. The contract also contained a provision as follows:

"Provided, that when the said second party shall have paid to the said first parties the sum of ten thousand dollars according to the terms of this contract he shall upon the execution and delivery to said first parties of his promissory notes for the balance unpaid, said notes to be for the same amount, payable at the same time and draw the same rate of interest as the deferred payments then unpaid, under the terms of said contract and secure said notes by a first mortgage upon such portions of said real estate as has not been conveyed by said first parties under the terms of this contract, be entitled to a warranty deed for all the remainder of said premises."

The contract also provided that, upon final payment, the vendors were to have a good and sufficient deed to the premises, free and clear of all incumbrances. The appellant, or its predecessor in interest, paid the first two installments of $4,000 and $2,000. No other sum was ever paid or tendered to the vendors.

When the appellant was in default in the payment of $10,000 due on March 1, 1911, and interest up to that date, the respondents, at the solicitation of the president of the appellant corporation, agreed orally that, if the appellant would pay $4,000 and the accrued interest at the rate of 10 per cent per annum, and would execute notes secured by a mortgage upon the property, the respondent would thereupon

execute a deed conveying the title to the appellant. Thereafter, on May 27, 1911, notes and a mortgage, and a deed to the property were deposited in a bank in Seattle to be delivered to the appellant, or its assigns, upon the payment of $4,000 and accrued interest, amounting altogether to something like $7,000.

Thereafter, about July 1, 1911, the respondents notified the appellant that, unless the oral agreement was complied with and the money paid as therein agreed, they would withdraw the papers delivered in escrow and rescind the oral agreement. After this notice, the appellant did not comply with the oral agreement, and the papers were withdrawn and the oral agreement rescinded. Thereafter, on July 15th the respondents served a written notice upon the appellant that, if the terms of the written contract were not complied with by July 24, 1911, the contract would be deemed null and void and all moneys paid would be declared forfeited according to the terms of that contract. No further payments were made, and on July 24th the respondents filed a written declaration of forfeiture in the office of the auditor of Grant county, and on July 26th served a copy upon the appellant company. Thereafter, on March 4, 1912, this action was begun.

The facts above stated are not disputed. In the complaint it was not alleged that the respondents at the time the written notice of forfeiture was served, or at any time, tendered a deed of the premises to the appellant. And it was not claimed upon the trial that any deed had been tendered.

It is claimed by the appellant that the reason for not complying with the oral agreement entered into as aforesaid was, that a patent had not been issued by the United States for 160 acres of the land in question, and by reason of that fact there was a failure of title. The principal contention of the appellant, and the only one which we deem necessary to notice in this case is, that the tender of a good and sufficient deed was a mutual dependent and concurrent act, necessary to be performed by the respondents before a forfeiture could be de-

clared. That it was both necessary to allege a tender of a deed and to prove that fact before the court was authorized to annual the contract. A number of cases from this court are relied upon to sustain this proposition, among which are *Stein v. Waddell*, 37 Wash. 634, 80 Pac. 184, and *Reese v. Westfield*, 56 Wash. 415, 105 Pac. 837, 28 L. R. A. (N. S.) 956. But we think this case is not controlled by the rule in those cases. In *Reese v. Westfield, supra,* we said:

"If the case of *Stein v. Waddell* and the succeeding cases to which we have referred have been hitherto misunderstood, we desire now, for the sake of certainty, to lay down the rule that, where land is sold under a time contract calling for payment by installments, and every installment has been paid except the last one, the vendor may, if he act with reasonable promptness, declare a forfeiture, unless by the terms of the contract he has agreed to perform some act necessary to the complete performance of his agreement, as, for instance, the giving of an abstract or the tender of a deed, in which event his power to forfeit depends upon his offer and ability to perform; for, as this court has said, his duty to tender performance depends upon, and is concurrent with, the duty of the vendee to meet the final payment."

It will be noticed, from what we have already said above, that, at the time this action was begun, all the payments provided for in the contract had not been made. Two payments only had been made, one of $4,000 due on the 1st day of March, 1910, and one of $2,000 due on the first day of July of the same year. The payment of $10,000 due March 1, 1911, was in default, and also the interest, amounting to more than $1,000 due on the 16th day of August, 1910. The provision above quoted to the effect that, when $10,000 had been paid upon the contract and promissory notes secured by mortgage had been executed for the balance unpaid, it was the duty of the respondents to deliver a warranty deed for the remainder of the premises, was merely an option which the appellant was entitled to exercise or reject as it saw fit. Until it exercised that option to pay the balance of the

$10,000, it was as much in default as though that provision had not been inserted in the contract. According to the decisions relied upon by the appellant, the payments, except the last one, must all have been made before the tender of a deed became a mutual, concurrent and dependent act. This court has held, that where the payments prior to the last have not been made, contracts of this kind may be forfeited without the tender of a deed. In other words, that it is the duty of the vendee, under a contract of this character, to comply with the terms of the contract. If this is not done before the last payment becomes due, the vendors may forfeit the contract without the tender of a deed, because such payments are independent of the covenant to convey. In *Garvey v. Barkley*, 56 Wash. 24, 104 Pac. 1108, in speaking of a contract similar to the one in question, we said:

"Before the next attempted tender was made, and while appellant was clearly in default, respondent had elected to declare the contract and all of appellant's rights thereunder forfeited, and had given appellant formal written notice thereof, which had been received. Contracts of this nature have uniformly been upheld by this court and given full force according to the plain import of their language. [Citing cases]."

In *Sleeper v. Bragdon*, 45 Wash. 562, 88 Pac. 1036, which is a case very similar to this one, at page 567 we said:

"The contract is specific in its terms, and was evidently made to meet such apparent indifference and neglect. Time is not only of its essence, but it expressly provides that, upon failure to make either of the payments, all payments theretofore made shall be forfeited, and shall be retained by respondents who shall also be given possession of the land. No sufficient reason appears in this case why the contract so made shall not be enforced against appellant according to its terms. The authorities cited by appellant are to the effect that, even when time is of the essence of a contract and when a default in payment has been made, those facts standing alone do not establish a forfeiture; but that some affirmative action in the way of declaring a forfeiture must have been taken by him

who asserts a forfeiture. We have seen that such affirmative action was taken by the respondents in this case. The principles stated by the cited authorities are sound and reiterate the well-known doctrine that equity abhors a forfeiture, but they do not undertake to change the rule of equity that legal contracts will be enforced as made and in accordance with the acts of the parties thereunder."

We are clearly of the opinion that the installment payments, except the last, are independent of any act on the part of the respondents, and that such payments were required to be made by the appellant in accordance with the terms of the contract; and upon failure to make the payments as agreed, it was within the power of the respondents to terminate the contract, which was done.

It may be said of the oral contract which was entered into between the parties that the appellant did nothing towards a performance thereof. Without part performance, it was clearly void. *Gerard-Fillio Co. v. McNair*, 68 Wash. 321, 123 Pac. 462, and cases there cited. The only performance which was attempted was the act of the respondents in preparing the deed and notes and mortgage and depositing them in the bank in Seattle. If the appellant had performed this contract, such performance, no doubt, would have caused the oral contract to take the place of the original contract. But after these papers had been placed in escrow for a period of two months, and after notice to the appellant that, unless the oral agreement was performed, the papers would be withdrawn, they were withdrawn by the respondents before anything was done by the appellant. The respondents clearly acted within their lawful rights in so doing. This oral contract, therefore, was of no force or effect.

It is claimed by the appellant that the reason this contract was not complied with was because there was a defect in the title, in that a patent for a certain portion of the land had not been issued by the United States. It was, we think, clearly shown that the president of the appellant was aware of

this fact at the time the oral agreement was made, and that the oral agreement was made by reason of that fact and that the appellant thereby agreed to waive that defect in the title. At any rate, whatever the excuse, there was no part performance of the oral contract on the part of the appellant, and therefore it is entitled to claim nothing under it. So far as the defect in the title is concerned, it was not necessary at the time the contract was made that a perfect title should rest in the respondents. It was sufficient for the purposes of the written contract in question here that title be made good at the time the final payment was made upon the contract. *Morris v. Columbia Canal Co.*, 75 Wash. 483, 135 Pac. 238.

It follows from the conclusion we have reached above that the judgment must be affirmed. It is therefore not necessary to consider the other questions presented in the briefs.

Judgment affirmed.

Crow, C. J., Parker, Fullerton, and Morris, JJ., concur.