[No. 22908. Department One. March 9, 1931.]

NATIONAL BANK OF TACOMA, *Respondent*, v. AETNA CASUALTY AND SURETY COMPANY, *Appellant*.[1]

[1]Reported in 296 Pac. 831.

240

*J. Speed Smith, Henry Elliott, Jr.,* and *Henderson, Carnahan & Thompson,* for appellant.

*Hayden, Langhorne & Metzger,* for respondent.

HOLCOMB, J.—This is an action upon an indemnity bond given by appellant, a compensated surety company, to respondent, on January 3, 1929. The bond, so far as material, reads:

"That we, AMERICAN WOOD PIPE COMPANY, a corporation of the state of Washington, with principal place of business at Tacoma, Washington, as Principal, and THE AETNA CASUALTY AND SURETY COMPANY of Hartford, Connecticut, as Surety, are held and firmly bound unto TWIN HARBORS LUMBER COMPANY of Aberdeen, Washington and/or THE NATIONAL BANK OF TACOMA, TACOMA, WASHINGTON in the penal sum of TWENTY-EIGHT HUNDRED AND NO/100 ($2,800) Dollars, lawful money of the United States, for the payment of which, well and truly to be made the said principal and the said surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents.

"Signed and sealed this 3rd day of January A. D. 1929.

"THE CONDITION OF THIS OBLIGATION is such that, WHEREAS, the said principal has accepted a written order from the TWIN HARBORS LUMBER COMPANY of Aberdeen, Washington and/or THE NATIONAL BANK OF TACOMA, TACOMA, WASHINGTON, dated December 21st, 1928 for furnishing the following quantity of material:

"65,000 ft. 2x6 16 ft. S2S T. & G. to 1½x5¼ Pattern Number 7056 at $42.00 F. A. S. Vessel—Shaffer Terminal No. 1 shipment to be made within ninety days, which order is by reference made a part hereof as fully to all intents and purposes as if set forth at length herein.

"Now, THEREFORE, if the said principal shall supply the material in accordance with the written order, and that they will indemnify TWIN HARBORS LUMBER COMPANY of Aberdeen, Washington and/or THE NATIONAL BANK OF TACOMA, TACOMA, WASHINGTON, against any direct or indirect damages that may be suffered or claimed for lack of delivery of material within the time called for; and further conditioned as required by law for the payment of all laborers, mechanics, sub-contractors and material men, and all persons who shall supply such person or persons or sub-contractors with provisions or supplies for the carrying on of such work, and all just debts, dues and demands incurred in the performance of the work, then and in that event this

obligation shall be void, but otherwise it shall remain in full force and effect.

"IN TESTIMONY WHEREOF, the said principal and the said surety have hereunto caused this instrument in writing to be signed and sealed by their duly authorized officers."

The bond was executed under the corporate seal of American Wood Pipe Company, a corporation, and by the surety company by its resident vice-president, at Tacoma, attested by the signature of its resident assistant secretary, with the corporate seal of the surety company affixed. After the execution, the bond was delivered by agents of the surety company to the president of the wood pipe company, who delivered it to the bank, at which time he also delivered to the bank an endorsement, in the form of an invoice covering goods described in the bond which had not then been manufactured. The invoice also had endorsed thereon an assignment to the bank.

Upon receipt of these papers respondent loaned to the American Wood Pipe Company $2,235, taking from the pipe company a promissory note, payable on demand, to cover the repayment of the loan. Respondent deposited the amount of the loan to the credit of the American Wood Pipe Company, and permitted it to draw against the deposit.

Some time afterwards the pipe company shipped to the Twin Harbors Lumber Company a portion of the materials called for in the order, and, at that time, made and delivered an invoice covering the materials shipped, together with an assignment of the invoice, to respondent, which was for the value of the materials then delivered in the sum of $974.79. Upon receipt of this invoice, respondent sent a written notice to the Twin Harbors Lumber Company that it had received the invoice, and that payment of the same should be

made to the bank. On or about April 9, 1929, the Twin Harbors Lumber Company paid to the bank the sum of $974.79, which it credited to the amount of the note.

In April, 1929, the pipe company was adjudged insolvent, and a receiver appointed for it. Subsequently, the Twin Harbors Lumber Company wrote to the receiver, cancelling the order referred to in the bond, to which cancellation the receiver consented.

The bank commenced this action for the full amount of the original invoice, namely: $2,730, alleging that, had the pipe company filled its order, respondent would have collected that sum, but that the pipe company failed to fulfill the order, and the bank was damaged accordingly. The bank alleged an oral understanding, by reason of certain alleged conversations antedating the bond, testified to by officers of the bank as having been entered into by one of the agents of the Surety Company, concerning the effect of, and construction to be placed upon, the bond.

The case was tried to the court without a jury, at the end of which findings of fact and conclusions of law were made favorable to respondent, and judgment entered accordingly. Findings and conclusions were submitted by appellant, which were rejected by the trial court. Exceptions were taken by appellant to most of the findings of the trial court, to its conclusion of law, and to the refusal of the trial court to make findings and conclusions submitted by appellant.

The discussions by counsel for both parties go far afield, in citing and discussing many texts and authorities not apposite to this case. In the first place, we are unable to agree with appellant's construction of the bond.

Appellant begins its statement in its brief as follows:

"The action is one based upon a surety bond."

■ The bond before us is not a surety bond. It is, as it states and as its context implies, in law an *indemnity* bond. 31 C. J. 419, 420. It does guarantee the performance of the order which is referred to in the bond as a part of it. But its obligation is to

". . . indemnify Twin Harbors Lumber Company of Aberdeen, Washington and/or The National Bank of Tacoma, Tacoma, Washington, against any direct or indirect damages that may be suffered or claimed for lack of delivery of material within the time called for."

It is true that the bond is further conditioned, "as required by law for the payment of all laborers, mechanics," etc., and those furnishing "provisions or supplies for the carrying on of such work," which may well be construed to be an obligation which could have been enforced by the Twin Harbors Lumber Company, in case of default on the part of the principal on the bond in those particulars.

"There is an obvious and important difference between a contract of guaranty or suretyship and a contract of indemnity." 14 R. C. L. 44.

"In the interpretation of indemnity contracts, the cardinal rule is that which applies to contracts generally, i. e., to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. Contracts of indemnity, therefore, must receive a reasonable construction so as to carry out, rather than defeat, the purpose for which they were executed. To this end they should neither, on the one hand, be so narrowly or technically interpreted as to frustrate their obvious design; nor, on the other hand, so loosely or inartifically as to relieve the obligor from a liability within the scope or spirit of their terms. Where the general import of a contract is one of indemnity, it is the rule that all of the words used therein should be construed to be in harmony with, and subservient to, the general purpose of the bond. When applied, however, this rule should

be in aid of the intention of the parties and should not be employed to defeat their purpose. Hence if a bond contains both a covenant to indemnify against loss and a covenant guaranteeing the performance of a specific thing, the latter covenant will not be subordinated to the former, but both will be given their full effect, and accordingly a failure to do the thing specified will constitute a breach of the bond, on the happening of which a cause of action will arise." 14 R. C. L. 46.

See, also, *National Surety Co. v. Campbell*, 108 Wash. 596, 185 Pac. 602.

■ Under the above stated rules, it was proper and competent for the trial court to receive evidence to ascertain the intention of the parties when this indemnity bond was given and delivered. To that extent, it was relevant and competent to show that the agent of the surety company had knowledge that the pipe company was under the necessity of securing advances on contracts received and accepted from a bank before the contract had been performed. It was also competent to show that the bank advanced the money on this particular order only upon the assurance that the order would be indemnified by some acceptable surety company.

■ While it was not competent to show that respondent had previous bonds from the same principal, secured by the same surety, upon such orders, the trial court, doubtless, admitted such testimony simply to permit respondent to make the desired record in the case, and, doubtless, the trial judge, when deciding the case, disregarded any and all immaterial and incompetent testimony. That is the presumption in all cases tried by the court without a jury, unless it plainly appears that the trial judge was governed only in arriving at a decision by evidence that was wholly irrelevant and incompetent.

Appellant asserts that the trial court based its judgment upon the bond as a guaranty of the note.

We do not so consider. The trial judge made a short oral summing up of the case on its submission, which will be briefly summarized. He referred to the fact that the American Wood Pipe Company was in a bad condition financially. It had reached a point where it was not able to carry on its business without financial aid. It received this order from the Twin Harbors Lumber Company of Aberdeen, which it could not fill, because it did not have the money to manufacture the goods.

It went to the bank to get the money with which to carry on this manufacturing. It told the bank it had this order. The bank said that it could not accept that order as collateral security for any loan, and required some other and further assurance, something more definite. The upshot was that the bond in question was put up, and, when the bond was put up, the bank furnished the money. The argument of Mr. Elliott (for appellant) would apply with considerable force as to the Twin Harbors Lumber Company and its recourse under the bond, but the situation of the bank is different. In order to get the money to fill the order of the Twin Harbors Lumber Company, the pipe company procured and delivered the bond of the surety company. The surety company gave a bond, a condition of which is that, whereas, the principal has accepted a written order from the Twin Harbors Lumber Company, now, if the pipe company will supply the material in accordance with the written order, to indemnify the bank against any direct or indirect damages which may be suffered by a lack of delivery of material within the time specified, then the bond to be void.

The bank had nothing to do with the furnishing of the material to the lumber company. The only thing it was to do was to furnish the money to manufacture and ship the material to the lumber company. There was no other purpose for mentioning the bank in the bond. The only reason it was mentioned at all was because it put up the money to aid the pipe company to manufacture the articles for the lumber company.

The pipe company contracted that it would manufacture and ship the goods according to order. If this contract had been complied with, and the goods had been manufactured and shipped to the lumber company, the bank, under the testimony, would have suffered no damage, because it would have received the proceeds and recovered its money advanced to the pipe company; but the fact that the pipe company failed to perform its contract, except in part, caused the bank to suffer a damage, against which the surety company contracted: "If this order is not filled and these goods are not shipped and you suffer damage by reason thereof we will make it good."

That was the object of the bond, and there was no other object, except to secure the bank on the loan. The loss suffered by the bank was not the loss of the entire order of the lumber company to the pipe company, for the order to the extent of $974.79 was fulfilled. It was not to secure the payment of the note, that the bond was given. That note was purely incidental, so far as this obligation was concerned. The whole purpose of the transaction and the letter of the bond, is to save the bank harmless in putting up the money, to enable the pipe company to manufacture the goods and fill the order. Since they did not do that, and the bank suffered a loss, the surety company agreed that the loss should be indemnified.

The trial judge then stated that respondent was entitled to judgment for the difference between the amount of the order, $2,235, and the $974.79 which had been received by respondent, and, thereafter, adjudged that interest should be allowed on the amount of the original order of $2,235 at the rate agreed upon between the principal in the bond and the bank of seven per cent. per annum from January 3, 1929, until April 9, 1929, and upon the balance of $1,260.21 from April 9, 1929, at the stipulated rate, until paid.

It is thus obvious that the trial judge did not proceed upon the theory stated by appellant.

We cannot fully agree with some of the theories advanced by respondent to sustain the judgment.

Obviously, however, appellant's agents knew full well that the bank did not manufacture lumber and lumber products, and that its principal did. Without any evidence, they knew that the sole business of the bank was loaning money. Disregarding some of the evidence introduced, as of doubtful relevancy and competency, other than that appellant's agents knew of the intended loan of the money by respondent upon the assigned order and this bond, and sticking closely to the terms of the bond, and the purpose for which it was knowingly and advisedly given by appellant, we are convinced that the bond, in its terms as an indemnity bond, was given for no other purpose than to indemnify respondent against the loss suffered by the non-fulfillment of the order of the Twin Harbors Lumber Company, as adjudged by the trial court.

See *Duke v. National Surety Co.,* 130 Wash. 276, 227 Pac. 2; *id.* on rehearing, 131 Wash. 700, 230 Pac. 102; *Warren v. National Surety Co.,* 149 Wash. 378, 271 Pac. 69. Compare *Olsen v. Nichols,* 86 Wash. 185, 149 Pac. 668.

█ Appellant also insists that the surety could not be held liable for a double penalty as it would be if the bond be construed as the trial court interpreted it, although the language of the bond is that it and its principal "are held and firmly bound unto Twin Harbors Lumber Company of Aberdeen, Washington and/ or The National Bank of Tacoma, Tacoma, Washington." Again, we consider that, appellant having furnished the bond itself, its language is to be most strongly construed against it (*Stusser v. Mutual Union Ins. Co.*, 127 Wash. 449, 221 Pac. 331), and that it was understood and intended that the liability to each of the obligees was joint *or* several, and not joint *and* several; and that there would be a different measure of liability to either of the obligees.

Thus, for non-fulfullment of the order to the lumber company, the pipe company would be liable for damages, measured by the difference between the value of the goods at the date of the breach of the bond, and their value to the lumber company had they been constructed and delivered within the time agreed. This is uniformly settled by our own cases, and by the courts of other states, very generally.

The lumber company was not damaged by the same matter which would damage respondent. Respondent was damaged by the non-payment of its debt. While it is true a note had been given for the debt, which was only partly paid, the note was merely evidence of the debt, and the loss by non-payment of the debt *pro tanto* was the damage which was contemplated by all the parties to be the damage to the bank.

Where the legal interest and cause of action of the obligees is several and not joint, the covenant is taken to be several, and each of the obligees may bring an action for his particular damage. 4 R. C. L. 65.

An indemnity to two or more indemnitees regarding the same subject matter may, according to the intention of the parties, be several.

"A contract of indemnity should be construed so as to cover all losses, damages, or liabilities, to which it reasonably appears to have been the intention of the parties that it should apply, but not to extend to losses, damages, or. liabilities, which are neither expressly within its terms nor of such character that it can reasonably be inferred that they were intended to be within the contract." 31 C. J. 429, 430.

Applying the above rule, here there can be no question but that the bond before us was intended to apply to losses or damages or liabilities of different character as to each of the indemnitees. It is also manifest that it was so intended by the principal and the surety.

Appellant also contends that, because interest was allowed on the amount of the original debt of respondent against the pipe company, it is shown that the trial judge considered that the bond was intended to guarantee the debt.

As a necessary part of his damages, an indemnitee may also recover against his indemnitor interest, after due notice to the indemnitor of the loss and damage. 14 R. C. L. 59.

It is thus seen that interest was a proper part of the damage sustained by respondent from the loss of that portion of the debt it lost, as stipulated in the instrument evidencing the debt between it and appellant's principal.

We are compelled to conclude that the judgment of the trial court was correct, and it is affirmed.

MITCHELL, MAIN, and PARKER, JJ., concur.

TOLMAN, C. J., dissents.