[No. 37268. Department Two. September 9, 1965.]

TOM FELTON et al., Respondents, v. THE MENAN STARCH COMPANY, INC., et al., Respondents, BASIN PRODUCE COMPANY, INC., Respondent and Cross-appellant, NATIONAL BANK OF COMMERCE, Appellant.*

*Reported in 405 P.2d 585.

*James B. Strong* and *Kerr, McCord & Moen,* for appellant.

*Ken Earl,* for respondent The Menan Starch Company, Inc.

*John E. Calbom,* for respondent Hansen.

*Darrell E. Ries,* for respondent and cross-appellant Basin Produce Company, Inc.

SOULE, J.†—The National Bank of Commerce appeals from summary judgments awarded against it in favor of the Menan Starch Company, Inc., (hereinafter called Menan), Basin Produce Company, Inc., (hereinafter called Basin) and Elmer Hansen. Basin cross-appeals from the judgment of the trial court limiting the amount of its recovery against the National Bank of Commerce. The judgments of Menan, Basin and Hansen against the National Bank of Commerce are actually judgments over arising because Felton and Moore recovered primary judgments against Menan, Basin and Hansen. No primary judgment was obtained by Felton and Moore against the National Bank of Commerce. The judgments against the National Bank of Commerce are founded upon two indemnity agreements, the proper understanding of which requires an examination of the unusual factual background of a series of complex commercial transactions.

Felton and Moore owned farm units which were leased to one Charles Davis (hereinafter called Davis) for the crop years of 1957, 1958 and 1959. The leases were in writing and duly recorded on May 29, 1957. They provide that one-fifth of the crops were to be paid to the landlords as rent.

To finance his 1958 operations, Davis sought the assistance of one P. A. Pappageorge, doing business as the West Coast Potato Company, and assigned 50 per cent of the crop

---

†Judge Soule is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

to him as security. In turn, Pappageorge obtained a loan of $20,000 from the National Bank of Commerce, which was secured by a crop mortgage on the 50 per cent interest in the crop held by Pappageorge. This mortgage was duly filed on April 14, 1958.

In the fall of 1958, Davis harvested the crop and sold it to various produce companies. Menan paid by three checks totaling $8,915.01, drawn on the Seattle-First National Bank. Each was payable to the West Coast Potato Company, Charles Davis and the National Bank of Commerce. These checks were dated and in the amounts as follows: October 17, 1958—$5,348.54; November 5, 1958—$2,347.77; November 17, 1958—$1,218.70.

Basin paid by three checks totaling $5,234.91 drawn on the Seattle-First National Bank and made payable to the order of Charles Davis, the Seattle-First National Bank, P. A. Pappageorge and the National Bank of Commerce. Two of these checks were paid and only the one dated November 18, 1958, in the amount of $2,415.05, is directly involved in the present dispute.

Hansen paid by a check dated November 6, 1958, in the amount of $2,656.06 drawn on the National Bank of Washington, payable to the West Coast Potato Company, Charles Davis and the National Bank of Commerce.

The landlords Felton and Moore were not named as payees on any of the checks which were delivered to Davis and Pappageorge. On January 29, 1959, Davis obtained the certification of the drawee bank, Seattle-First National, on the Basin check in the amount of $2,415.05, and on two of the Menan checks in the amounts of $5,348.54 and $2,347.77. Davis then disappeared, apparently taking the checks with him. These checks had not been endorsed by the National Bank of Commerce.

The Menan check for $1,218.70 and the Hansen check for $2,656.06 drawn on the National Bank of Washington came into the possession of the National Bank of Commerce, which caused them to be certified on March 11 and 13, 1959. These checks did not contain the endorsement of Davis.

None of the checks, totaling $13,986.12, has been presented for payment.

Having received only $132.67 upon the Pappageorge indebtedness of $20,000, the National Bank of Commerce entered into identical indemnity agreements with the National Bank of Washington and the Seattle-First National Bank, pursuant to which these drawee banks paid over the monies represented by the certified checks. Menan, Basin and Hansen were named as parties to the agreement, although somehow they were not aware of this until just before the trial out of which this appeal has arisen. The agreement with the Seattle-First National Bank was dated November 24, 1959, and the funds were received on November 27, 1959. The agreement with the National Bank of Washington was dated December 4th, and the funds were received on December 17, 1959.

On December 17th, the National Bank of Commerce also received a letter from Hansen advising the bank of the landlord's claim for unpaid rent and stating further "We shall expect you to take care of the landlord's claim for rent from the funds held in payment of our check if and when those funds come into your possession."

The proceeds of these funds, together with other small sums received, totaled $14,122.55. The National Bank of Commerce, knowing that by the terms of the agreement between Davis and Pappageorge, each had a one-half interest in this fund, applied one half of the fund directly to the Pappageorge indebtedness. The amount was $7,061.27. The Davis claim to the other half was recognized but the bank, meantime, had come into possession of a note for an additional $5,814.30 executed by Davis to Pappageorge which Pappageorge had already assigned to the bank. This note was discharged by deducting the amount due thereunder from the one half recognized as belonging to Davis, leaving a balance of $1,246.97, which the bank even now recognizes as belonging to Davis. The Pappageorge indebtedness to the National Bank of Commerce is still in excess of $7,000.

So far as the record reveals, matters lay in this condition until September of 1961. The period within which any lien rights could be enforced had long since expired. RCW 60.12.040 and .080. Felton and Moore brought an action against Menan, Basin and Hansen for money judgments based upon the conversion of their share of the crops. Judgments were rendered in favor of Felton and Moore against Menan, Basin and Hansen, but not against the National Bank of Commerce. The Menan judgment was for $1,783, the Basin judgment for $1,046.98, and the Hansen judgment for $531.21, all with interest from the dates of sale of the crop in 1958. At the same time, the court also entered summary judgments based upon the indemnity agreement in favor of Menan, Basin and Hansen and against the National Bank of Commerce as follows: In favor of Menan for $1,783, Basin for $483.01, and Hansen for $531.21, and interest was allowed in each case from the date of the original sale of the crop, together with attorneys' fees of $400 each.

Initially, the National Bank of Commerce and Basin appealed from the primary judgments rendered in favor of Felton and Moore which judgments were based upon the acts of Davis in selling to Menan, Basin and Hansen and which the court found to be a conversion of the crops. The trial court recognized that no lien existed because of the long delay in beginning the action. Thus, the right to trace the funds under a lien theory is not involved.

The appeals from the Felton and Moore judgments were thereafter abandoned. The only questions now before the court are whether or not Menan, Basin and Hansen have rights to judgment over against the National Bank of Commerce by virtue of the indemnity agreement, the operative portions of which are as follows:

Now, THEREFORE, to induce Second Parties to deliver over to First Party the funds or moneys held against certification of each and all of the aforesaid checks, First Party does hereby covenant and agree as follows:

1

That it will indemnify and hold harmless Second Parties and each of them [1] against any loss, cost, charge or expense arising from or connected with presentment or payment of any of the checks hereinabove described, [2] and also against any loss or damage they or any of them may sustain by reason of any claim made by or on the part of any of the other payees named in such checks, or by any person or persons claiming by through or under any of such payees, *by reason of such delivery of such funds or moneys;* and further, subject only to tender thereof, [3A] that it will assume at its own cost and expense the defense of any suit or action, which may or might be brought against Second Parties or any of them by any person or persons whomsoever claiming damage or loss *by reason of such delivery,* or any right in or to the said checks or in or to moneys *so delivered,* and, [3B] further to indemnify and hold harmless Second Parties and each of them against any judgment or decree which may be rendered in any suit or action. (Bracketed numbers and italics ours.)

 The basic rules for construing a written contract are well known. The intention of the parties must control; the intent must be ascertained from reading the contract as a whole; and, where language used is unambiguous, an ambiguity will not be read into the contract. *Wise v. Farden,* 53 Wn.2d 162, 332 P.2d 454 (1958). The court must ascertain the intention of the parties and strive to give effect to that intention and the construction must be reasonable so as to carry out, rather than to defeat, the purpose for which it was given. *National Bank of Tacoma v. Aetna Cas. & Sur. Co.,* 161 Wash. 239, 296 Pac. 831 (1931). If the contract is ambiguous, the doubt created by the ambiguity will be resolved against the one who prepared the contract. *Sunset Oil Co. v. Vertner,* 34 Wn.2d 268, 208 P.2d 906 (1949); *Foss v. Golden Rule Bakery,* 184 Wash. 265, 51 P.2d 405 (1935).

When the indemnity agreements were drawn, the only parties who could have had any intentions were the three banks concerned. Menan, Basin and Hansen knew nothing of them.

Likewise, by this point in time, Menan, Basin and Hansen had lost control of the funds because of the certification of the checks. RCW 62.01.188. See, also, 10 Am. Jur. 2d, *Banks* §§ 590 and 600. Even then, Menan, Basin and Hansen were exposed to the risk of having to pay again for landlords' share of the crops, but the extent of potential lien rights was not known by the banks.

At the time the indemnity agreement was drawn, there was no real risk of a claim being made by or on the part of any other payee named in the checks. (Clause [1]). However, there certainly was a potential risk from persons claiming by, through, or under one of the payees by reason of the delivery of the funds. (Clause [2]). Specifically, if Felton and Moore could have established a landlords' lien and thus a right to trace the proceeds of the crop to the funds held by the Seattle-First National Bank and the National Bank of Washington, they clearly would have been injured by reason of the delivery of the funds. Likewise, there was a possible exposure if a creditor of Davis had attempted to garnish Seattle-First National Bank or the National Bank of Washington to reach the Davis interest in the certified checks. See *Moore v. Gilmore,* 16 Wash. 123, 47 Pac. 239 (1896).

Although stress is laid upon the fact that plaintiffs claim some right to the fund through Davis, the contention can be upheld only if the plaintiffs claimed and established lien rights to the fund as landlords, or perhaps as attaching creditors. This they did not do.

The Felton and Moore action against Menan, Basin and Hansen did not arise from the delivery of the funds. Rather, it arose from the conversion of the crops. Felton and Moore became only general creditors with no lien rights. They have claims against Davis, but it can hardly be said that, because of any acts of Davis, they have any claim through Davis *by reason of the delivery of the funds.*

Menan, Basin and Hansen invoke clause [3B] of the indemnity agreement. In so doing, they seek to divorce it from the language of clause [3A] immediately preceding, in which the National Bank of Commerce undertook to

defend suits against Menan, Basin and Hansen by any person claiming loss or damage *by reason of the delivery of the fund.*

■ They cannot be so separated. It is inconceivable that the National Bank of Commerce would undertake to indemnify against judgments rendered in actions which it was not obligated to defend. Where one construction would make a contract unreasonable and another equally consistent with its language would make it reasonable, the interpretation which makes it a rational and probable agreement must be adopted. See *Patterson v. Bixby,* 58 Wn.2d 454, 364 P.2d 10 (1961).

We hold that, because the primary judgments of Felton and Moore against Menan, Basin and Hansen were based upon the defendants' own acts of conversion and since the landlords had no lien and thus no right to trace the crop into the funds in the hands of the bank, Menan, Basin and Hansen have failed to establish a claim of damage through Charles Davis arising by reason of the delivery of the funds. The produce companies' liability is simply not of the type against which the agreement indemnified.

■ The produce companies assert that certain quoted portions of the trial court's memorandum opinion should be treated as findings of fact established in this case because no exception was taken to them. We decline to so treat the memorandum opinion. This case was decided in a summary judgment proceeding in which no findings of fact and conclusions of law were required and none were entered. *State ex rel. Zempel v. Twitchell,* 59 Wn.2d 419, 367 P.2d 985 (1962).

The judgment of the produce companies against the National Bank of Commerce is reversed.

DONWORTH, FINLEY, WEAVER, and HAMILTON, JJ., concur.