[No. 30004. *En Banc.* May 1, 1947.]

C. VAN GEEST, *Respondent,* v. HOWARD WILLARD *et al., Appellants,* R. W. PRIVETTE *et al., Respondents.*[1]

[1]Reported in 180 P. (2d) 78.

*Charles Stone,* for appellants.

*Houghton, Cluck & Coughlin* and *Mervyn F. Bell,* for respondents.

JEFFERS, J.—This is an action on a promissory note, instituted by C. Van Geest, as the owner and holder of such note, against Howard Willard and Faye Willard, his wife, makers of the note. The note, introduced as plaintiff's exhibit No. 1, is dated July 18, 1944, and is for the principal sum of five hundred dollars. It is made payable to the order of R. W. Privette and became due February 1, 1945. The note draws interest at the rate of six per cent per annum from date. It is signed by Mr. Howard Willard and Mrs. Howard Willard and is endorsed on the back, "Pay to the order of C. Van Geest. R. W. Privette."

The complaint alleged the transfer of the note, before maturity, for a valuable consideration, by R. W. Privette to

plaintiff; that the note had not been paid, although demand for payment had been made. The complaint was filed February 5, 1945.

Defendants Willard and wife, by their answer and cross-complaint, admitted the execution of the note and its delivery to plaintiff, but denied it was delivered to plaintiff before maturity and for value. Defendants then set up two affirmative defenses, in the first of which it was alleged that, on or about July 18, 1944, defendants entered into negotiations with R. W. Privette and wife, looking toward the purchase of the following described real property in King county, to wit: The north 150 feet of the south 180 feet of the west 90 feet of the east 480 feet of the southeast quarter of the southwest quarter of section 2, township 24 north, range 6, E.W.M. (this is beach property); that, as a part of such negotiations, a certain contract form was prepared by Privette, and defendants were informed and believed that this contract form was signed by Privette and wife; that such contract was never signed by defendants, and defendants thereafter refused to complete the contemplated purchase and refused to enter into the proposed contract of purchase.

It was further alleged that the note here sued upon by plaintiff was given by defendants Willard to evidence the down payment under the proposed contract. It was further alleged that, prior to the time plaintiff acquired any ownership of or interest in the note, he was orally informed by defendants of the facts surrounding the note and the proposed real estate contract; that there was no consideration for the note.

In the second affirmative defense, it was alleged that defendants were informed and believed that, sometime between July 18, 1944, and December 8, 1944, plaintiff purchased the property hereinbefore described, and received conveyance thereof, from R. W. Privette, and purchased and accepted an assignment of the vendor's interest in the real estate contract hereinbefore mentioned, which contract was dated July 18, 1944, and in which Privette and wife were named as sellers, and Willard and wife as purchasers.

It was further alleged that, on or about December 8, 1944, plaintiff caused to be served upon defendants a notice of intention to declare a forfeiture of such contract, which notice provided that

". . . all payments heretofore made thereunder will be retained by the undersigned in liquidation of all damages sustained by reason of your default";

that, after service of the notice, defendants exercised no dominion over the property and acquiesced in the forfeiture by plaintiff; that the note sued upon by plaintiff was intended to represent a portion of the down payment under such purported contract, and this fact was known to plaintiff at the time he acquired the note.

Defendants Willard, by way of cross-complaint, made the defendants Privette parties to this action. The allegations in the cross-complaint were in effect the same as those set out in the two affirmative defenses. The prayer of the cross-complaint was that plaintiff's action be dismissed; that, in the event plaintiff was, permitted to recover against defendants Willard, they be granted judgment against the Privettes for any amount plaintiff was allowed to recover against defendants Willard.

Defendants Privette, by their answer to the cross-complaint, denied the following allegations of the cross-complaint:

"That the defendants, Willard, executed said note and delivered the same to said Privettes and said Privettes accepted said note, all parties intending said note to represent the down payment under the proposed contract for the purchase and sale of the above mentioned described real property. That no contract for the purchase and sale of said property was ever entered into or consummated between the said Willards and said Privettes. That there was no consideration for said note."

Defendants Privette then alleged that the note was given and accepted in lieu of cash or payment of the portion of the purchase price of the property receipted for in the contract. Plaintiff, by his reply, denied the material allega-

tions of the answer of defendants Willard. The cause came on for trial before the court on November 16, 1945.

We shall refer to the witnesses as they were called, and give a summary of the material part of their testimony. Mr. Van Geest was the first witness called. He testified that he was the owner and holder of the note (plaintiff's exhibit No. 1), and that no part of the note had been paid. The note was admitted in evidence, without objection. On cross-examination, this witness testified he purchased the note from Mr. Privette about a week or ten days after its execution; that he purchased the note and real estate contract at the same time, but as separate transactions, and paid Mr. Privette fifteen hundred dollars for them.

Defendants' exhibit No. 2 was then marked for identification, and the witness stated that the exhibit was one of the copies of the contract he purchased; that there were three or four copies. Exhibit No. 2 purports to be a real estate contract entered into on July 18, 1944, between R. W. Privette and Vivian Privette, his wife, called "seller," and Howard Willard and Faye Willard, his wife, called "purchaser," wherein the seller agreed to sell and the purchaser agreed to purchase the real estate hereinbefore described. We quote the following terms of the contract:

"The purchase price is Seventeen Hundred ($1700.00) Dollars, of which Five Hundred ($500.00) Dollars has been paid, the receipt whereof is hereby acknowledged, and the balance of said purchase price shall be paid as follows: $50.00 on August 1st 1944, and $25.00 on Sept. 1st 1944 and $25.00 each and every following month thereafter, until the said principal sum, together with six per cent interest on remaining balances shall have been fully paid."

The contract contains a provision that the purchaser is entitled to possession on August 1, 1944. It contains the usual provisions of such contracts, including a forfeiture clause. This particular exhibit was signed and acknowledged by Mr. and Mrs. Privette, before Paul Meyer, a notary public, on July 18, 1944.

Mr. Van Geest stated that Mr. Willard wanted him to buy "this deal," or loan him some money to make the deal,

and that he told Willard he would be willing to buy the note and contract at a discount; that thereafter Willard and Mr. Privette came to his house with the note and several copies of the contract; that at that time the contract had been executed by Mr. and Mrs. Privette, but not by the Willards; that Willard at that time, at the request of Van Geest, signed one copy of the contract. Mr. Van Geest explained the absence of Willard's signature on exhibit No. 2 by stating that he usually had the parties sign one contract and then made copies for the person with whom he was dealing; that in this instance he must have inadvertently given to Willard the copy he had signed.

This witness also testified that, at the time above mentioned, Mr. Willard made out a check for fifty dollars in his favor, for the purpose of paying the installment due under the contract on August 1, 1944; that he (Van Geest) would not take the check, as he had not yet made the deal, so Willard asked him to endorse the check and give it to Mr. Privette, which he did. At this point plaintiff rested.

Defendants first called Mr. Privette. This witness's attention was called to the contract, and he stated it was made out by Mr. Meyer on the date it bears, July 18, 1944. Mr. Privette did not remember how many copies were made. He stated that Mr. Willard was not present when the contract was made out; that, at the time he and Willard went to Van Geest's house, the contract was not signed by Willard; that while at Van Geest's house he saw Willard signing some papers, but was not sure whether Willard signed the contract or not; *that at that time Van Geest delivered to Willard a copy of the contract.* The witness was then shown exhibit No. 1, the note, and he stated that it was prepared before the contract was made out. In answer to a question as to how he got the note, and when it was made out, he stated:

"A. Well, it was made out and Howard,—Mr. Willard, he signed it there at the store, in my grocery store. He came there every day with bread, and he took it home and had his wife sign it the next day and took it over to Mr. Van Geest to see if he would buy the contract and take the note

and everything. I needed the money for the store at that time and I rather take a discount and get the money then than to wait and get it all at one time. I mean wait and get it a little bit at a time. Q. Did you transfer the contract to Mr. Van Geest? A. Well, I gave this to him and then I transferred the contract to Mr. Van Geest."

The witness stated Mr. Van Geest paid him fifteen hundred dollars for the note and contract. He did not remember the date he executed the assignment of the contract to Mr. Van Geest, but stated it was the same time he endorsed the note. On cross-examination, Mr. Privette identified plaintiff's exhibit No. 3, which is an assignment of the real estate contract by Privette and wife to Van Geest, and is dated August 10, 1944.

This witness further stated that he ordered title insurance in Mr. Willard's name, and that a policy of title insurance was delivered to Mr. Willard. Defendants' exhibit No. 4 is a policy of title insurance, dated August 24, 1944, at eight o'clock a. m., and purports to insure Howard Willard and Faye Willard against loss not exceeding seventeen hundred dollars. Mr. Privette further stated that Mr. Willard many times had discussed with him the purchase of this place; that, after the above transaction, the Willards bought furniture and moved into the house on the premises.

Mr. Van Geest was next called by defendants as an adverse witness, and was shown defendants' exhibits Nos. 6 and 7. He identified exhibit No. 6 as the notice of intention to declare a forfeiture of the contract which he sent to defendants, the notice being dated December 8, 1944, and exhibit No. 5 as the envelope in which the notice was placed. This envelope shows that it was registered and a return receipt card requested.

"Q. What transpired, if anything, with relation to the contract after you mailed defendant's exhibit 6? A. I sent that notice and Mr. Willard,—In the first place he refused to accept it. It came back. It was returned to me, I believe, and then I had it delivered to him in person and then after he had it, why, he came down to my house and came backing in. He said that he was going to try to sell this place, and he had the bill of sale and all of that stuff, and

I had been after him for these payments since last September, and I told him I didn't have to stand for any more monkey business and I was going to go through with the foreclosure. So he said he wouldn't have any money until February anyhow; but he said, 'I have got title to the furniture', he says. 'Will you take it in the place?' I says, 'I will take it for what it is worth. What is it worth?' I thought $100.00. He gave me the key to the place, and I drove out and checked all of that furniture. A year ago I was in the furniture business in Seattle here, so I knew the value, and I came back and said I would give him $100.00 for that furniture. 'Well,' he says, 'if you take it in at $100.00 will you take that in as a payment on the contract?' I says, 'Yes' And I took it in on the contract and gave him credit on his contract for $100.00 payment."

Willard denied that any such conversation ever took place. Van Geest stated that the conversation took place sometime before February, 1945, because Willard promised to pay the note in February, and it hadn't become due. Willard made no further payments on the contract.

Mr. Van Geest further stated that, about two or three days after this action was started, Mr. Willard gave the key to the house to an employee of Mr. Privette, and Mr. Privette gave it to plaintiff.

This witness further stated that, at the time he took the furniture, he gave Mr. Willard a receipt for one hundred dollars. Counsel for plaintiff made demand upon defendants for this receipt, and, upon being informed they did not have it, counsel for plaintiff had marked for identification plaintiff's exhibit No. 7, which Van Geest stated was a copy of the receipt given to Willard. Exhibit No. 7 was admitted without objection. It is dated December 21, 1944, and states:

"Received of Howard Willard furniture as listed on back hereof to apply as $100.00 credit on R Est contract. Bal. $1050.00.                    [Signed] C. VAN GEEST"

On the back of this receipt is a list of furniture.

This witness also identified plaintiff's exhibit No. 8, which is dated December 15, 1944, and states:

"Received of C. Van Geest

"Puget Sound Title Insurance Policy No. 78309, dated August 24, 1944

"Copy of Real Estate Contract, dated July 18, 1944.

"Registered unclaimed letter No. 92022, dated Dec. 8, 1944.

"[Signed]   HOWARD WILLARD"

Howard Willard was next called and stated that he never saw the copy of the contract introduced as defendants' exhibit No. 2; that the only copy he ever saw was the one he procured from Van Geest, and which was introduced here as defendants' exhibit No. 9. This exhibit is the one that Van Geest stated he made out for Willard when he came to Van Geest after the notice of forfeiture, at which time, he (Willard) stated to Van Geest that he had a prospective buyer for the property, but that he had lost his copy of the contract. Van Geest then made a copy and gave it to Willard.

Mr. Willard stated the note was signed by defendants and given to Mr. Privette at the latter's store.

"Q. What was the purpose of giving him the note? A. Well, this was given for the fact that this $500.00 to be payable in February on this contract that we were about to go into."

It may be noted that the contract makes no reference to a note or to a five-hundred-dollar payment to be made in February.

Mr. Willard stated he never signed any contract in any form relative to the property here involved. He also stated that he had never seen the original or copy of plaintiff's exhibit No. 7, the receipt for furniture. Mr. Willard admitted that he got the key to the house in July, about the date of the contract, and that he returned the key in December, 1944, after receipt of the notice of intention to forfeit. He also admitted defendants had been in possession of the premises. One of the most amazing statements made by Mr. Willard, in view of the record, is the following: "I never knew Mr. Van Geest had taken it over until I got the notice of foreclosure."

At the close of Mr. Willard's testimony, defendants rested.

Mr. Privette was called by plaintiff in rebuttal. He stated that Mr. Willard was willing that he sell the contract to Mr. Van Geest, or he would not have sold it; that he wanted to get his money out of it and use it in the store; that the Willards lived on the property; that Mr. Willard never made any claim to him that he did not have a contract to buy the property; that, while the Willards were living on the property, the Willards and Privettes visited back and forth, and their children played together.

Mrs. Privette was also called by plaintiff, and testified:

"Q. Did you ever discuss this contract for the purchase of this property with Mr. Willard, or his wife? A. Well, when we first took them out to show the cabin, I went along and our children and his family, and they talked about how well they liked it, and how they would like to buy it, but they didn't have the money. And then they finally decided on making out the note. Q. Using the note as part payment? A. Yes."

Mrs. Privette stated that the Willards lived on the place all that summer and fall, and that she never heard them say they did not have a contract.

Mr. Willard was also called by plaintiff in rebuttal.

"Q. Why was the note given? Why did you give a five-hundred-dollar note? A. Because at that time I didn't have any money, and the money I had coming from my last job came to me in February, so I figured at the time I would pay that note when it came due in February. That note was to complete the contract. Q. Well, you knew that the contract already applied it, didn't you? A. I didn't hear that question, sir. Q. You knew that the contract applied it, *that is you knew they were accepting that in lieu of cash* and that you were going to pay the note off in February, weren't you? A. That is right." (Italics ours.)

At the close of the case, the court orally announced that its decision would be favorable to defendants. Plaintiff then moved for judgment notwithstanding the oral decision, or in the alternative for a new trial. The court, after con-

sideration of the above motion, on April 2, 1946, filed a memorandum decision, from which we quote:

"Upon further consideration of the evidence in the above entitled cause, I am of the opinion that the defendants, by accepting the benefits of the contract—making the payments as required thereby and taking possession of the property which was the subject matter of the contract—are bound by its terms and provisions irrespective of whether they signed it or not, and this is especially true since the defendants at no time denied any of its terms and provisions.

"I hold that by reason of the defendants' default before the last payment was due, the said contract is forfeited.

"I further hold that the note here sued on was given and accepted in complete satisfaction of that much of the specified purchase price designated in said contract, was given and accepted as cash and not to evidence a deferred payment, and that by reason thereof, under the authorities submitted, the plaintiff's motion for judgment notwithstanding the oral decision of the court should be and the same hereby is granted, and judgment therefore may be entered in favor of the plaintiff as prayed for in plaintiff's complaint, including an attorney fee in the sum of $100.00."

On April 19, 1946, defendants Willard filed a motion for new trial, or in the alternative for judgment notwithstanding memorandum decision granting plaintiff's motion for judgment notwithstanding oral decision of the court. These motions were denied on April 19, 1946, and, on the same day, the court filed findings of fact, conclusions of law, and judgment.

The court found that defendants Willard had failed to establish their cross-complaint against Privette and wife, and had failed to establish their affirmative defense against plaintiff. Judgment was rendered in favor of plaintiff as prayed for in his complaint. Defendants Willard have appealed from the judgment entered.

Appellants make four assignments of error:

"1. Granting respondents' motion for judgment notwithstanding oral decision; 2. Denying appellant's motion for judgment notwithstanding order granting respondent's motion for judgment notwithstanding oral decision of court; 3. Finding that appellants failed to establish their affirma-

tive defense; 4. Granting respondent Van Geest judgment against appellants."

The execution and delivery of the note here in suit are admitted. The evidence is undisputed that respondent is the owner and holder of the note, and that it has not been paid. Respondent, having proved the above facts, is entitled to judgment, unless appellants have established one or both of their affirmative defenses.

We are convinced that the evidence shows that, if appellant Willard did not actually sign the contract at the time he and Mr. Privette first went to see Mr. Van Geest and when the transaction was discussed, he knew the terms and conditions of the contract. The evidence further shows that Willard also knew that the deal would not go through unless Van Geest was willing to purchase the note and contract, as Mr. Privette wanted the money to use in his business.

It is first contended by appellants that the evidence is insufficient to show that the contract was ever made or entered into by appellants, and this being true, that there was no consideration for the note sued on.

Regardless of whether or not appellants or either of them signed the contract, we are of the opinion, as was the trial court, that the evidence shows that appellants knew the terms and conditions of the contract; that they made payments pursuant to its terms; that they went into possession of the property in July, shortly after the contract was executed by the vendors, Privette and wife, and continued in possession until sometime in December; that at no time did appellants, or either of them, ever make any claim that they did not have a contract to purchase the property. Under these conditions, we are of the opinion that appellants are bound by the terms and conditions of the contract.

In 66 C. J. 544, § 83, it is stated that, as a general rule, a written agreement cannot be considered as a completed contract for the sale of land until it is signed by all the parties. However, the following exception to the rule is then set out:

"Nevertheless, subject to the requirements of the statute of frauds, it may be competent for the parties to adopt a writing as their contract without either party signing, or without both parties signing, and a contract signed by one of the parties only may be binding on both, if accepted and acted on by the other. Thus a contract signed by the vendor only may be binding on both parties when accepted and acted on by the purchaser, and a contract signed by the purchaser alone may be valid when acted on by the vendor."

In the case of *Bulmon v. Bailey,* 22 Wn. (2d) 372, 156 P. (2d) 231, we recognized the principle above announced and held that the vendee, or purchaser, under a real estate contract was bound by the terms of such contract, although she did not sign the same, it being signed only by the vendors. We stated:

"We regard this omission as of no importance, as respondent [vendee] accepted the contract and became bound thereby."

*Wright v. Suydam,* 72 Wash. 587, 131 Pac. 239, was an action to enforce specific performance of a written contract for the sale of real estate. W. Hammond Wright was the purchaser, and Hendrick Suydam the seller. The contract was signed by Mr. Suydam only. In regard to the question of whether or not the mutuality of obligations of the parties was affected by the fact that Mr. Wright had not signed the contract, we stated:

"It also seems plain, under our former decisions, that the fact that the contract was unilateral in form, being signed only by Suydam [seller], would not show a want of mutuality."

The next question to be considered is stated in appellant's brief as follows:

"In the event the court finds a complete and binding contract was established then the issue raised by the second affirmative defense in appellant's answer becomes pertinent. Should Van Geest's act in forfeiting the contract prior to maturity of the note sued upon preclude him from recovering in this action?"

We think the question here presented is narrowed ·down to the following: Was the note here sued upon given and accepted as a cash payment of that much of the specified purchase price, or as evidence of a deferred payment referred to in and secured by the contract?

Appellants cite the cases of *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N.S.) 71; *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, Ann. Cas. 1917D, 462; *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790; *Jones-Short Motor Co. v. Bolin,* 153 Wash. 198, 279 Pac. 395; and *Chavelle v. Duclos,* 154 Wash. 492, 282 Pac. 843.

■ We are of the opinion that the written contract expressed the entire agreement of the parties. The contract makes no mention of the five-hundred-dollar note, nor of any payment of five hundred dollars to be made in February, 1945. The contract expressly states that the purchase price is seventeen hundred dollars,

" . . . *of which Five Hundred ($500.00) Dollars has been paid, the receipt whereof is hereby acknowledged,* and the *balance* of said purchase price shall be paid as follows:" (Italics ours.)

The contract does not purport to secure the payment of the five-hundred-dollar note, but only the unpaid balance of twelve hundred dollars.

We have consistently recognized the rule applied by the trial court in this case, and, in applying the rule, it is apparent that considerable weight has been placed upon the terms of the contract, where, as in the instant case, the contract specifically recites that a certain amount of the purchase price has been paid and receipt thereof is acknowledged.

Under the evidence in this case, we are of the opinion the trial court was justified in concluding that the note here sued upon was given and accepted as a cash payment of that amount of the purchase price, and not as evidence of a deferred payment.

■ Under this situation, respondent was entitled to

bring suit on the note, regardless of his forfeiture of the contract prior to the maturity of the note.

In support of our conclusion, we are of the opinion the rules announced in the case of *Vickerman v. Kapp*, 167 Wash. 464, 9 P. (2d) 793, are applicable and controlling here. The cited case was an action on a promissory note. The trial court awarded judgment to plaintiff as prayed for. Defendants appealed. One of appellants' contentions was that, as shown by their answer, the note in suit was evidence of payment under a conditional sales contract, that the contract had been rescinded, and that therefore the consideration for the note had failed. In discussing this question, we stated:

"The conditional sales contract shows that the purchase price was fourteen hundred dollars, 'of which vendee has paid on account the sum of three hundred fifty dollars.' On this subject the court found:

" 'That at the time of the execution of the conditional sales contract referred to in the pleadings herein, defendant was then and there temporarily unable to make $300 of the $350 down payment required by plaintiff on the purchase of the automobile mentioned in said conditional sales contract, but stated to plaintiff that he would be able to make said payment within ninety days, whereupon defendant executed to plaintiff a promissory note heretofore filed herein as plaintiff's exhibit No. 1, which promissory note was then and there accepted by plaintiff absolutely and unconditionally as cash, and in complete satisfaction of $300 of the purchase price of said automobile, and was receipted for as cash in said written conditional sales contract, and was in no wise secured in any manner whatsoever by the said written conditional sales contract or the reservation of title therein.'

"Under these facts, the note was a wholly separate and distinct thing from the contract, and nothing in the contract secured the payment of the note or referred to the note in any way. One may, of course, accept a note in payment just as he may accept a used car, a horse or any other property, as a down payment on a contract; *and this peculiar fact of having accepted the note as payment* distinguishes this case from the cases relied upon by the appellants." (Italics ours.)

This court in the cited case then discussed the cases relied upon by the appellants in that case, which are the

same cases relied upon by appellants here, and after such discussion, in which the cases of *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790; *Jones-Short Motor Co. v. Bolin,* 153 Wash. 198, 279 Pac. 395; and *Chavelle v. Duclos,* 154 Wash. 492, 282 Pac. 843, were particularly referred to, this court stated that the *Jones-Short Motor Co.* case was distinguishable on the facts, as there the conditional sales contract secured the payment of the note in question, and that the *Chavelle* case involved money which the contract bound the vendee to pay. We then said:

"We need not continue the discussion of the cases upon which the appellant relies upon this point, as all are distinguishable for like reasons."

It is true that the *Vickerman* case came to this court on the pleadings and the findings of fact, no statement of facts having been certified or sent up, but the identical legal question was raised and decided in the cited case that is raised here, and the facts found by the court in the cited case, upon which the decision was based, are very much like the facts found by the trial court in the instant case, which facts were undoubtedly the basis for the conclusion of the court in this case that appellants had not sustained their affirmative defenses or either of them.

In the case of *McHugh v. Rosaia,* 184 Wash. 463, 51 P. (2d) 616, we stated:

"Appellants rely upon *Blenz v. Fogle,* 127 Wash. 224, 220 Pac. 790, to sustain their position that the note was without consideration. That case is distinguishable in the feature we have just discussed. There, the vendee, who was personally liable for the purchase price, gave a note for a past due installment. The contract was subsequently rescinded. In an action on the note, the court held that the note was discharged by rescission of the contract.

"Even in such a case, *the question is whether the note was given and accepted in lieu of cash* [italics ours], as payment for the past due installment. This is a mixed question of law and fact. *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, Ann. Cas. 1917D, 462. If the note is so given and accepted, forfeiture or rescission of the contract for default in subsequent installments due under it does not discharge the maker of liability on the note. *Norman v. Meeker, supra:*

*Vickerman v. Kapp,* 167 Wash. 464, 9 P. (2d) 793. The rule is recognized and stated in *Blenz v. Fogle, supra.*

"The court found (and the finding is supported by a preponderance of the evidence) that the note was given by Rosaia and accepted by respondent in *payment* of the past due installment and interest. So, under the evidence and facts found, it is immaterial whether Rosaia was personally liable under the contract."

In *Norman v. Meeker,* 91 Wash. 534, 158 Pac. 78, we stated that the one question to be determined was whether the note of the appellant sued on was given by him and accepted by the respondent in lieu of cash, as payment and satisfaction *pro tanto* of part of the purchase price under a conditional sale of chattels. The lower court held the note was given as payment and in lieu of cash, and this court affirmed the judgment. In the opinion, we distinguished *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, and other cases of like nature, as follows:

"Nor is this case analogous to that of *Winton Motor Carriage Co. v. Broadway Automobile Co., supra,* and the other cases of like nature, for the reason that in this case the *contract* must be construed as a contract *reciting a present payment of $500.* While it is true that a note was given for that present payment, it was given as cash." (Italics ours.)

We are satisfied respondent met any burden which may have been placed on him to establish that the note was taken in payment, and not as evidence of a deferred payment.

█ There was some testimony to the effect that the policy of title insurance shows a reservation of coal and mineral rights, which reservation is not contained in the contract. Without in any way intimating what the effect of such a reservation might be, we assume appellants have waived any contention they may have made as to this point, in view of the fact that this matter is not raised or argued in their brief.

█ However, if such reservation be considered as a defect in the title which the seller in this case agreed to convey, appellants are not in a position to take advantage of such fact, as the contract was forfeited because of appel-

lants' default before the last payment was due. See *Reard v. Ephrata Orchard Homes Co.*, 78 Wash. 180, 138 Pac. 678, wherein we stated:

"So far as the defect in the title is concerned, it was not necessary at the time the contract was made that a perfect title should rest in the respondents. It was sufficient for the purposes of the written contract in question here that title be made good at the time the final payment was made upon the contract."

For the reasons herein assigned, the judgment of the trial court is affirmed.

ALL CONCUR.

