[No. 38213.  Department One.  March 24, 1966.]

HONEYWELL, INC., *Appellant,* v. J. F. BABCOCK *et al., Defendants,* INLAND AUTOMOBILE ASSOCIATION *et al., Respondents*\*

*Leslie L. Woods,* for appellant.

*Geo. W. Young,* for respondents.

OTT, J.—This appeal involves the construction of a building contract, and a labor and material payment bond furnished by the general contractor. The facts, although somewhat involved, are not in dispute.

February 12, 1963, S. G. Morin & Son (hereinafter referred to as the general contractor) entered into a contract to furnish all labor and materials necessary to construct an office building for the Inland Automobile Association of

\*Reported in 412 P.2d 511.

Spokane (hereinafter referred to as the owner), in accordance with the owner's plans and specifications, for a consideration of $202,083.

The general contractor, in compliance with the terms of the construction contract, furnished two surety bonds, (1) a performance bond, and (2) a labor and material payment bond. The surety was United Pacific Insurance Company (hereinafter referred to as the bonding company). It is the interpretation of the latter bond which is involved in this action.

The construction contract provided that the general contractor's work must be "substantially completed August 15, 1963 and fully completed September 5, 1963," subject to designated penalties for late construction, and that the owner could occupy the building prior to the completion date without waiver of full performance of the conditions of the contract.

The general contractor subcontracted the mechanical portion of the contract to J. F. Babcock, doing business as Babcock Plumbing, Heating & Air Conditioning Co. (hereinafter referred to as Babcock), for $57,888. Babcock subcontracted a certain portion of his subcontract to Honeywell, Inc., for the sum of $10,558. As the work progressed, the general contractor made progress payments to Babcock. Babcock in turn paid $2,500 to Honeywell, Inc., to apply upon that subcontract.

July 29, 1963, the building being substantially completed, the owner moved in and occupied the premises.

August 17, 1963, Babcock went into receivership, and the general contractor then employed the firm of Warren, Little and Lund to complete the Babcock work.

During the month of August, 1963, the owner's architect died. At the time of his death, he had not issued to the general contractor a certificate of completion of the work on behalf of the owner, as required by the contract. Thereafter, the owner's mechanical engineer, Mr. H. Jack Reeves, inspected the premises for construction items necessary to complete the contract.

September 26, 1963, Mr. Reeves, on behalf of the owner, prepared and delivered to the general contractor a written instrument (designated as a "punch list") detailing necessary construction items to be performed as follows:

6213 A.A.A.
Mechanical
9/26/63

*Work to be done*
*Mechanical*

1. Valves inverted in fan-coil units.
2. Balance air system
3. Summer-Winter legend plate on dampers.
4. Tag valves.
5. Description names (a) controls (b) piping (c) ducts (d) pumps and switches.
6. Replace broken thermostat MZ-CW return.
7. Caulk sewer pipe in outside wall.
8. Install grille on fan-coil unit east side supply room and make door access to controls and valve.
9. Repair damaged or misplaced end sheets on several fan-coil units.
10. Provide access to controls on 2 unit heaters, basement-entry and receiving room.
11. Spare filters

*Refrigeration*

1. Cooling water control valve surging.
2. Cooling water solenoid valve does not close on machine shutdown.

*Controls*

1. Thermometers in airways
2. Connect air manometer properly in MZ unit
3. Mark all damper positions

Part of the items detailed on the "punch list" was performed by Honeywell, Inc., and the remainder by Warren, Little and Lund.

October 15, 1963, Honeywell, Inc., installed three dial-type thermometers inside the airways and fully performed all of its items detailed on the "punch list." When Honeywell, Inc., presented its statement in the sum of $8,058 to the owner, the general contractor, Babcock, and the bonding company for the balance due it on labor and material furnished in the construction of the building, payment was refused.

August 18, 1964, Honeywell, Inc., commenced this action against the owner, the general contractor, Babcock, and the

bonding company on the labor and material payment bond. The defendants admitted the labor and material were furnished, but contended that the action was barred by the express provision of the bond which required that the action be commenced within one year after the general contractor ceased work; that the general contractor's work had ceased July 29, 1963, and that the action was not commenced until August 18, 1964.

The trial court held that the general contractor's work had ceased July 29, 1963, and that the action was barred by the express limitation in the bond.

From the judgment dismissing its cause of action, Honeywell, Inc., has appealed.

The sole issue presented by this appeal is an interpretation of the limitation in the labor and material payment bond which provided:

3. No suit or action shall be commenced hereunder by any claimant.

. . . .

(b) After the expiration of one (1) year following the date on which Principal [general contractor] ceased work on said Contract.

The general contractor furnished the labor and material for the major portion of the contract, but subcontracted the mechanical and electrical portion of the contract to subcontractors skilled in those fields.

July 25, 1964, in the following letter, the owner acknowledged that the general contractor had substantially completed the building by July 29, 1963:

This letter is written in lieu of what, in the ordinary course of events, you would have received from our architect as a letter of acceptance on completion of construction of our new office building. The death of Henry C. Bertelsen prevented his delivering such letter.

Accordingly, this will confirm the fact that our new office building was *substantially completed* in accordance with the plans and specifications and that our organization moved into the new building *on or about July 29, 1963* and have been occupying it for regular operations since that time.

This letter is, of course, subject to any and all guarantees and agreements extending guarantees, and is written to indicate substantial completion and acceptance on the date referred to. (Italics ours.)

The evidence is conclusive that the building contract was substantially completed on July 29, 1963. Our query is whether the "one (1) year following the date on which Principal [general contractor] ceased work on said Contract" started to run on July 29, 1963, when the building contract was *substantially* completed. If so, the action was not timely commenced. If cessation of the work contemplated *complete* performance, then the action was timely commenced.

In construing contracts, words used therein must be given their usual and ordinary meaning. *Miller v. Allstate Ins. Co.,* 66 Wn.2d 871, 405 P.2d 712 (1965). Webster's Third New International Dictionary defines the word "cease" as "to leave off : bring to an end : DISCONTINUE, TERMINATE." The general contractor could not "bring to an end" the building contract until his subcontractors had finished their work. The general contractor was responsible to the owner for the satisfactory and full completion of the subcontractors' work under the contract. The owner's "punch list," dated September 26, 1963, required further work to be performed under the contract. In this regard, Mr. Reeves stated:

Q. As of the date you made this check list of the 26th of September, had your mechanical specifications been complied with? . . . A. Well, this check list is work to be done. It is sometimes called a punch list, and it cannot contain anything but what is called for in the specifications, or reasonably implied work, to—corrective work to make it comply with the specifications.

Mr. Morin, the general contractor, was called as a witness and testified, *inter alia:*

Q. Isn't it true, Mr. Morin, that Warren, Little and Lund came in and did some work after that date? A. They did some work, yes. Q. Was that work done in furtherance of the original contract? A. Well, that punch list you put in here was taken care of—admitted in evidence

here. Q. There was some work they did on that punch list? A. Yes. . . . Q. Mr. Morin, you indicated earlier that Warren, Little and Lund, apparently did some work on this punch list we have been talking about. Are you aware of any other work they did after Babcock left this job? A. I believe they installed that pump that Mr. Reeves was talking about.

Mr. Paul Elder, office manager of the Spokane branch of Honeywell, Inc., testified that the last item of work and material furnished on the building by Honeywell was the installation of three thermometers in the control system airways on October 15, 1963, and that this work was in compliance with the original building plans and specifications.

That further substantial work was required to be per- formed by the general contractor before he could "termi- nate" the contract was established by the evidence that, subsequent to August 17, 1963, the general contractor em- ployed Warren, Little and Lund to complete Babcock's portion of the contract, and that for completing this work the general contractor paid Warren, Little and Lund $845.84.

Further, the construction contract became a part of the labor and material payment bond by reference. The bond provided: " . . . which contract is by reference made a part hereof, and is hereinafter referred to as the Contract." The construction contract provided that the work was to be substantially completed August 15, 1963, and fully com- pleted September 5, 1963. Since the construction contract became a part of the bond, subcontractors and materialmen could rely upon September 5, 1963, as the completion date, unless an earlier completion date was requested by the general contractor. We find nothing in the record to indi- cate that such a request was made.

Under the facts here presented, the general contractor's work did not cease until the materials and the work required by the contract had been furnished and completed. We hold that the trial court erred in its determination that appellant's claim was barred by the limitation provision of the bond.

The respondent bonding company further contends that it has been discharged from its liability under the bond for the reason that the principal (general contractor) has in good faith made payments to Babcock for the full amount of his subcontract.

The bond provision relied upon is as follows:

> 4. The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder, inclusive of the payment by Surety of mechanic's liens which may be filed of record against said improvement, whether or not claim for the amount of such lien be presented under and against this bond.

The appellant was conceded to be a qualified claimant under the bond and had furnished the bonding company with the required notice. The bond provides for reduction only in the event either or both of the following conditions are present: (1) that the bonding company has paid labor and materialmen's liens or (2) that the bonding company has otherwise expended funds "in good faith hereunder" to the claimant.

The bonding company made no payments to the appellant claimant under either of the specified provisions for reduction. We find no merit in respondent bonding company's contention.

Finally, the respondent bonding company contends that the judgment of the court must be affirmed for the further reason that appellant did not file a notice of claim of lien, as required by RCW 60.04.020, and, since appellant waived its right to a lien, it has no cause of action on the bond.

We find no provision in the bond which requires that, as a condition precedent to maintaining an action on the claim, the claimant must qualify as a statutory lien claimant. The only conditions precedent to recovery under the bond are that the claimant must show he has furnished labor and materials, has so notified the bonding company, has not been paid, and has commenced his action within "one (1) year following the date on which Principal ceased work on said Contract."

Since the provisions of the bond do not require that appellant be a statutory lien claimant, we find no merit in this contention.

The judgment is reversed, and the cause remanded with instructions to enter judgment in favor of the appellant in the sum of $8,058, together with interest at the rate of 6 per cent per annum from October 15, 1963. Appellant will recover costs.

ROSELLINI, C. J., HUNTER and HALE, JJ., and LANGENBACH, J. Pro Tem., concur.