[No: 42642.    En Banc.    November 7, 1974.]

FRANK JONES, *Respondent*, v. STROM CONSTRUCTION CO., INC., *et al.*, *Respondents*, BELDEN & THOMPSON, INC., *Appellant*.

*Alvin A. Anderson* and *Larry E. Levy* (of *Davies, Pearson, Anderson, Gadbow & Hayes, P.S.*), for appellant.

*Witt, Hutchins, Plumb & Wheeler, Schuyler J. Witt, Frederick B. Hayes* (of *Rush & Hayes*), and *Bradford M. Gierke,* for respondents.

HAMILTON, J.—In this appeal the basic issue is the inter-

pretation of an indemnity clause in a building construction subcontract. The trial court adopted a broad all-inclusive interpretation. We disagree, reverse and remand.

Belden & Thompson, Inc. (hereinafter Belden), a masonry contractor, was awarded a subcontract by the prime or general contractor, Strom Construction Company (hereinafter Strom), to furnish masonry work and materials in the construction of the Tacoma Labor Center Building. The general contract cost was $976,000 of which Belden's subcontract represented $46,436. During construction, Frank Jones, one of Belden's employees, was injured when the flooring on which he was working collapsed due to lack of shoring beneath. Strom was responsible for determining whether or not to shore the floor and for the installation of any shoring. Strom's foreman chose not to shore.

Jones sued Strom and Layrite Concrete Products of Seattle, Inc. (hereinafter Layrite), another subcontractor. Strom, as a third-party plaintiff, then instituted a third-party action against Belden for indemnification under an indemnity clause of the subcontract. On the morning of trial, Strom and Layrite settled with Jones. Strom's contribution toward the settlement was $14,500. Trial then proceeded before a jury on the third-party claim. At the conclusion of the evidence, the trial court granted Strom's motion for a directed verdict on the issue of indemnification. In reaching this conclusion, the trial court considered the evidence in a light most favorable to Belden and most strongly against Strom, thereby holding the sole cause of Jones' injuries to be the lack of shoring under the floor upon which he had been working. The trial court, then, relying upon *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), determined the language of the subcontract's indemnity clause to be broad enough to, as a matter of law, afford indemnity by Belden to Strom, even though the accident resulted from the single cause indicated.

In the process of reaching its ruling, the trial court held

RCW 4.24.115,[1] the purport of which would have otherwise relieved Belden of such liability, to be unconstitutional by virtue of the manner in which it was enacted. Error has not been assigned to this ruling. Since this issue, thus, is not squarely before us, we do not reach the merits of the trial court's holding in this respect.

Belden essentially assigns error to the trial court's liberal construction of the indemnity clause in question.

In *Felton v. Menan Starch Co.*, 66 Wn.2d 792, 405 P.2d 585 (1965) and *Continental Cas. Co. v. Seattle*, 66 Wn.2d 831, 405 P.2d 581 (1965), we pointed out that, in general, indemnity clauses, just as other contractual provisions, are subject to fundamental rules of contractual construction, *i.e.*, the intent of the parties' controls; such intent must be gathered from the contract as a whole; the intent and construction afforded the provision and the whole of the contract must be reasonable so as to carry out, rather than defeat, the purpose of the overall undertaking; and where the language used is unambiguous an ambiguity will not be read into the contract; however, if ambiguity exists, the doubt created thereby will be resolved against the one who prepared the contract.

Moreover, and specifically with respect to indemnity provisions, it is to be noted that: (a) clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; (b)

---

[1]"A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract or agreement relative to the construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith, purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable." RCW 4.24.115.

such clauses are to be viewed realistically, recognizing the intent of the parties to allocate as between them the cost or expense of the risk of losses or damages arising out of performance of the contract; and (c) causation of loss is the touchstone of liability under a construction contract indemnity clause, rather than negligence, although negligence may be incidental to the cause. *Continental Cas. Co. v. Seattle, supra; Fleming v. Stoddard Wendle Motor Co.,* 70 Wn.2d 465, 423 P.2d 926 (1967); 41 Am. Jur. 2d *Indemnity* § 15, at 699 (1968). *See also* Annot., *Building Contractor's Liability, Upon Bond or Other Agreement to Indemnify Owner, for Injury or Death of Third Persons Resulting from Owner's Negligence,* 27 A.L.R.3d 663 (1969).

With the foregoing principles in mind, we turn to the indemnity clause here in issue. That clause, one of 16 provisions printed on the back of a standard form contract, states that Belden, as a subcontractor, agrees:

> To indemnify and save harmless the CONTRACTOR from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR's performance of this SUBCONTRACT.

At first blush, the clause appears to be broad and sweeping in its language and coverage. Nevertheless, on closer reading and analysis it ties the losses, which it saves Strom harmless from, to claims "arising out of," "in connection with," or "incident to" Belden's "performance" of the subcontract. It makes no mention of or reference to Strom's "performance" of the primary contract. It is, therefore, Belden's performance of the subcontract, and losses "arising" from, connected with, or incidental to that performance, which forms the keystone on which indemnity turns. Thus, it is clear that unless an overt act or omission on the part of Belden in its performance of the subcontract in some way caused or concurred[2] in causing the loss in-

---

[2]*Union Pac. R.R. v. Ross Transfer Co.,* 64 Wn.2d 486, 392 P.2d 450 (1964).

volved, indemnification would not arise. Belden's mere presence on the jobsite inculpably performing its specified contractual obligations, standing alone, would not constitute a cause or participating cause. Since, then, under the trial court's ruling on the motion for directed verdict, it was Strom's performance or nonperformance of its contractual obligations which was the sole cause of the accident involved, Belden would not be obligated under the indemnity clause.

Furthermore, and in keeping with the principles of construction above alluded to, it does not appear reasonable or in keeping with the overall purpose and intent of the subcontract, to isolate and read the indemnity clause in such a fashion as to virtually cast Belden into the role of an insurer of Strom's performance of its separate and nondelegated primary contractual obligations. Certainly, it could not have been the intent of the parties in executing a subcontract, which represented only approximately 1/20th of the overall contract price for the project, to constitute Belden an indemnitor of Strom as against any and all losses or damages occurring to Belden or its employees as a direct and sole result of Strom's, or another of its subcontractor's, negligence in the performance of duties not delegated to Belden. Such an interpretation does not appear to us to square with a realistic effort on the part of the parties to logically allocate as between them the risk of loss arising out of the construction project and the subcontract in question. In any event, the indemnity clause in issue is not wholly free of ambiguity and, since Strom ostensibly provided and/or required the subcontract form embracing the instant indemnity clause, the doubt created by the ambiguity should be resolved against it.

It is for these reasons that we reverse the judgment of the trial court and remand the cause for retrial.

Insofar as *Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra,* and *Griffiths v. Henry Broderick, Inc.,* 27 Wn.2d 901,

182 P.2d 18, 175 A.L.R. 1 (1947), relied on in *Tucci*, be inconsistent with our conclusion herein, they are overruled.

One final and incidental issue remains for resolution. In entering judgment against Belden under the indemnity clause, the trial court awarded Strom attorneys' fees in the amount of $3,325 incurred in the defense of the action instituted by Jones, and $2,500 resulting from prosecution of Strom's third-party claim against Belden on the indemnity provision. In an earlier case, we authorized an award of attorneys' fees for the defense of a claim indemnified against. *Abrahamson v. Burnett*, 157 Wash. 668, 290 P. 228 (1930). We have not heretofore had occasion to consider whether attorneys' fees attributable solely to litigation of the indemnity issue itself are recoverable. The general, and virtually unanimous rule appears to limit the allowance of such fees to the defense of the claim indemnified against and not to extend such allowance for services rendered in establishing the right to indemnification. 41 Am. Jur. 2d *Indemnity* § 36 (Supp. 1974); 42 C.J.S. *Indemnity* § 13d (1944). We hold, therefore, that, in the absence of express contractual terms to the contrary, an indemnitee may not recover legal fees incurred in establishing his right to indemnification. Thus, should Strom prevail on retrial of this action, it would not be entitled to recover attorneys' fees on this cause of action.

The cause is remanded for new trial. Costs will abide the result.

HUNTER, WRIGHT, UTTER, and BRACHTENBACH, JJ., and LANGSDORF, J. Pro Tem., concur.

STAFFORD, J. (concurring in part; dissenting in part)—I concur with the majority's disposition of attorneys' fees. I dissent from the interpretation and disposition of the indemnity contract.

First, Belden asserted it was not bound by the contract of indemnity because the agreement ran counter to RCW 4.24.115. The trial court rejected that contention, declaring

that RCW 4.24.115 was unconstitutional. Thus, it held, Belden was not relieved of liability under the terms of the agreement. Based thereon, the trial court granted Strom's motion for directed verdict against Belden. The majority has summarily brushed this aside with the offhand comment that the issue was not squarely before the court. I disagree.

The trial court's refusal to apply RCW 4.24.115 is bottomed on a *specific holding* that the statute is unconstitutional, thus, denying Belden its claimed statutory protection. Belden has not assigned error to, argued, or otherwise challenged the ruling. That being the case, we should not consider the unchallenged ruling further. ROA I-43; *Hockley v. Hargitt*, 82 Wn.2d 337, 345, 510 P.2d 1123 (1973); *In re Cassel*, 63 Wn.2d 751, 755, 388 P.2d 952 (1964); *see also Van Geest v. Willard*, 27 Wn.2d 753, 769, 180 P.2d 78 (1947). While there is no need for this court to rule on the statute's constitutionality, the trial court's unchallenged holding is determinative of the issue for the purpose of *this* case (*i.e.*, it is the law of the case). Thus, Belden's assertion that the indemnity clause violated RCW 4.24.115 is completely undercut, leaving nothing further to consider on the subject of that assigned error.

Second, as the majority points out, the indemnity clause in the contract requires the subcontractor, Belden, to indemnify the contractor, Strom,

> from and against any and all suits, claims, actions, losses, costs, penalties, and damages, of whatsoever kind or nature, including attorney's fees, arising out of, in connection with, or incident to the SUBCONTRACTOR's performance of this SUBCONTRACT.

It is the majority's view that the indemnitor's action must "cause" or be a "participating cause" of the loss involved. I disagree. Neither the words nor the idea is embodied in the contract.

Further, the majority adds that Belden's mere presence on the jobsite, inculpably performing its specified contrac-

tual obligation, was not a "cause" or "participating cause." Again, I disagree. Belden concedes that its employees' presence on the construction site was a *cause in fact* of the accident. Yet, it, like the majority, asserts such presence was not the "proximate cause" of the accident. Clearly, this is beside the point. The question of "proximate cause" is not before us. That question arises only between Jones, the injured employee, and Strom. Insofar as the indemnity agreement is concerned, the only issue is whether the accident arose out of, had some connection with, or was incident to Belden's performance of the subcontract. The majority confuses the "proximate cause" of tort law with "causation-in-fact" required by the contract.

In *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), overruled by the majority, the Court of Appeals interpreted an identical provision under similar facts and held the subcontractor bound to indemnify the contractor for losses sustained by the latter even though the loss had been occasioned solely by the negligence of the contractor. As the Court of Appeals stated, at page 1038:

> As we view this indemnity clause, it would be most difficult to assemble words which describe a more comprehensive and all-inclusive intent by the indemnitor to indemnify the indemnitee for all losses suffered by the indemnitee, "of whatsoever kind or nature," so long as they had some connection with the indemnitor's performance of the subcontract.

The majority would require "an overt act or omission on the part of Belden in its performance of the subcontract" which caused or concurred in causing the loss involved. Yet, the provision requires only a loss "arising out of, in connection with, or incident to the SUBCONTRACTOR's performance of this SUBCONTRACT."

Since Belden agrees that its employee's presence on the construction site was a cause-in-fact of the accident, it does violence to the clear contractual intent of the parties to

read into the indemnity provision a "proximate cause" requirement.

Without question, the parties did not contract for a lawsuit to determine the question of negligence. Rather, they utilized an indemnity agreement, the terms and effect of which were well known to the area contractors, as a means of assigning the risk of third-party liability claims. This is not unique. In construing an indemnification agreement which contained the requirement that the loss occur "in connection with" the subcontractor's performance of his subcontract, the Fifth Circuit Court of Appeals said in *Alamo Lumber Co. v. Warren Petroleum Corp.*, 316 F.2d 287, 290 (5th Cir. 1963):

> Here, however, Alamo had contracted to install cabinets, and when the two men were overcome by gas they were admittedly installing the cabinets near the uncapped pipe. Since the only requirement for indemnity is that the employee's injury have some connection with Alamo's work, Warren is entitled to recovery over against Alamo.

Words used in a contract must be given their usual and ordinary meaning. *Honeywell, Inc. v. Babcock*, 68 Wn.2d 239, 412 P.2d 511 (1966). By so considering the words here involved, it is clear that Belden contracted to indemnify Strom under the circumstances at hand.

I would affirm that portion of the trial court's judgment dealing with the indemnification agreement.

FINLEY and ROSELLINI, JJ., concur with STAFFORD, J.