**PAKISTAN INTERNATIONAL AIR-LINES CORPORATION, Appellant,**

v.

**The BOEING COMPANY, Appellee.**

**No. 76–3098.**

United States Court of Appeals,
Ninth Circuit.

May 1, 1978.

William L. Parker, of Bogle & Gates, Seattle, Wash., Condon & Forsyth, New York City, for appellant.

Keith Gerrard, Seattle, Wash., for appellee.

Before BROWNING and TANG, Circuit Judges, and TAYLOR, District Judge.*

PER CURIAM.

Pakistan International Airlines (P.I.A.) appeals from a summary judgment entered for Boeing in this suit for damage to one of P.I.A.'s airplanes as a result of an alleged negligent inspection by Boeing employees. The District Court granted summary judgment based upon an indemnification clause in the original purchase agreement that indemnifies Boeing for acts or omissions connected with the aircraft after delivery to P.I.A. by Boeing. This court has jurisdiction under 28 U.S.C. Sec. 1291.

*FACTS:*

P.I.A. purchased the subject aircraft from Boeing in 1961 pursuant to a purchase agreement. The aircraft was damaged during a hard landing at the Ankara, Turkey, airport on January 24, 1972. Two days later Boeing offered to have a survey team,

---

* Hon. Fred M. Taylor, Senior United States District Judge of the District of Idaho, sitting by designation.

that was already in route to Ankara on unrelated business, assist P.I.A. A Boeing consultant in Ankara informed Boeing on the same day that any charges or expenses of the survey team would require prior approval by P.I.A. management before Boeing could be reimbursed and that P.I.A. would greatly appreciate assistance from the survey team on a no-charge basis. The Boeing survey team performed a visual inspection of the damaged aircraft and left Ankara on February 2, 1972.

Based upon the initial visual inspection, Boeing submitted a repair proposal on February 28, 1972 to P.I.A. It began repairs on the plane before the proposal was accepted on March 13, 1972. After the repairs were completed and while Boeing employees were towing the aircraft to a hangar the trunnion support fitting for the left main gear collapsed causing $500,000 in damage to the plane.

P.I.A. based its complaint for damages on theories of negligence and breach of contractual warranties.

Article 15(e) of the 1961 purchase agreement which is material to the outcome of this action provides:

"Boeing will from time to time provide flight training to Buyer in addition to that provided for in paragraph (d) of this Article 15, and special services (which may include maintenance and repair) for the Aircraft after delivery thereof, subject to such terms and conditions including price, schedule, place and scope of work as shall be mutually agreeable to the parties."

Article 15(f) of the original purchase agreement is the indemnity clause which is at issue. In pertinent part it provides:

"Buyer will indemnify and hold harmless Boeing and each employee of Boeing assigned pursuant to paragraphs (a), (d) and (e) above from and against all liabilities, costs and expenses incident thereto, which may be suffered by, accrue against, be charged to or recoverable from Boeing or any such employee, or both, by reason of injury to or death of any person or persons . . . or by reason of loss of or damage to property,

including the Aircraft, arising out of or in any way connected with the performance by said employee of services in connection with any of the aircraft after delivery thereof to Buyer; . . ."

The repair agreement dated February 28, 1972 stated that the repair services to be provided were of the type contemplated in article 15(e) of the original purchase agreement. In addition, pursuant to the repair agreement Boeing was named as an additional insured under P.I.A.'s hull and aviation insurance liability policies.

The inclusion of the above terms in the repair agreement regarding indemnification necessitated P.I.A. alleging in their complaint that the cause of damage to the aircraft was Boeing's failure to discover the damage in the initial survey that took place prior to the parties entering into the repair agreement.

*ANALYSIS:*

In granting summary judgment for Boeing the District Court found that Boeing was performing a "special service" to P.I.A. when it made the initial inspection of the aircraft within the meaning of that term in article 15(e) of the purchase agreement. Therefore, article 15(f) applies and indemnifies Boeing for acts or omissions occurring during the survey.

The court found that 15(e) does not require that special services be incidental to maintenance or repair of the aircraft. Maintenance and repair were found to be descriptive rather than limiting of the term "special service". Even if special services were limited to incidents of maintenance and repair, the initial survey was clearly incidental to the repair of the aircraft because the information obtained was clearly used to formulate the proposed repair agreement.

The District Court further found that the parties had negotiated the terms and conditions of the initial inspection which P.I.A. claims is a prerequisite to the performance of a special service. Boeing offered its services which P.I.A. accepted providing that there would not be a charge for the service. Boeing evidently agreed to the

additional terms because they performed the survey without charge to P.I.A.

Counsel for P.I.A. maintains that article 15(f) of the original purchase agreement is ambiguous. Counsel specifically alleges that the term "services" is not defined in article 15(f). Counsel does concede that article 15(e) should be used to interpret the term "service". Article 15(e) speaks of "special services (which may include maintenance and repair)." P.I.A. argues that the term "special services" is so ambiguous in the context of this case as to necessitate the court in adopting the interpretation of special services in a light most favorable to P.I.A. It contends that it is not clear that special services encompass the unique circumstances of the initial survey and that a contractual understanding was both lacking and necessary before any special services could be performed by Boeing for P.I.A.

The Supreme Court of Washington sitting En Banc set out the standard that is to be applied to indemnity clauses. In *Jones v. Strom Construction Co., Inc.*, 84 Wash.2d 518, 527 P.2d 1115 (1974), the court stated:

> . . . In general, indemnity clauses, just as other contractual provisions, are subject to fundamental rules of contractual construction, i. e., the intent of the parties' controls; such intent must be gathered from the contract as a whole; the intent and construction afforded the provision and the whole of the contract must be reasonable so as to carry out, rather than defeat, the purpose of the overall undertaking; and where the language used is unambiguous an ambiguity will not be read into the contract; however, if ambiguity exists, the doubt created thereby will be resolved against the one who prepared the contract.
>
> Moreover, and specifically with respect to indemnity provisions, it is to be noted that: (a) clauses which purport to exculpate an indemnitee from liability for losses flowing solely from his own acts or omissions are not favored and are to be clearly drawn and strictly construed, with any doubts therein to be settled in favor of the indemnitor; (b) such clauses are to be viewed realistically, recognizing the intent of the parties to allocate as be-

tween them the cost or expense of the risk of losses or damages arising out of performance of the contract; . . . *Jones v. Strom Construction Co., Inc., supra*, at 1117–8

Article 15(e) clearly states that special services may include maintenance and repair of the aircraft. In preparing a repair proposal with the potential for extraordinary cost, an initial survey to obtain preliminary information may be necessary. It follows that the court below was correct in finding that the survey activities were clearly incidental to a possible repair. The District Court went even further in finding that it would be unreasonable to exclude the activities of the survey team from the meaning of special services. We agree.

The District Court's granting of summary judgment is AFFIRMED.